**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**KELLEY GRACE**                                           **CIVIL ACTION**

**VERSUS**

**LOUISIANA HOUSING**                                    **NO. 11-752-FJP-CN**
**FINANCE AGENCY**

<u>**NOTICE**</u>

       Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

       In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

       ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

       Signed in chambers in Baton Rouge, Louisiana, March 13, 2012.

                           **MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

KELLEY GRACE                                                                                    CIVIL ACTION

VERSUS

LOUISIANA HOUSING                                                                      NO. 11-752-FJP-CN
FINANCE AGENCY

<u>**MAGISTRATE JUDGE'S REPORT**</u>

This matter is before the Court on the Motion to Dismiss (R. Doc. 8) and the

Supplemental Motion to Dismiss (R. Doc. 17) filed by defendant, the State of Louisiana,

through the Louisiana Housing Finance Agency ("LHFA"). Plaintiff, Kelley Grace ("Grace"),

has filed an opposition (R. Doc. 13) to LHFA's motion.

<u>**FACTS & PROCEDURAL BACKGROUND**</u>

On November 4, 2011, Grace filed the present suit against LHFA, her former

employer. In the Complaint, she asserts that she was wrongfully terminated, that she was

subjected to a hostile work environment, and that she has a claim against LHFA under the

Americans with Disabilities Act ("ADA"). In a letter attached to her Complaint, she explains

that she was wrongfully terminated by LHFA in August 2010 and that she allegedly suffered

from severe depression as a result of the hostile work environment she experienced while

employed there. The allegations in the letter are otherwise vague and somewhat difficult

to interpret. From what the undersigned can discern, Grace was transferred to a new

position in the Contract Administration Department at LHFA for fourteen (14) months,

although no disciplinary action allegedly prompted her transfer, and she "begged to be

transferred to [her] old job." She states that she received "multiple letters, suspensions and

1

termination while being treated for severe depression and begged to be transferred 20 times and all request[s] were denied." Finally, Grace asserts conclusory allegations that she has claims against LHFA for defamation of character and for unethical business practices.

On January 26, 2012, LHFA filed the present motion to dismiss, wherein it contends that Grace's suit should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Alternatively, LHFA seeks a more definite statement of Grace's claims in accordance with Fed. R. Civ. P. 12(e).

On February 16, 2012, Grace filed a response to LHFA's motion, in the form of a letter, which provides more details concerning her claims. Among her additional allegations, she asserts that, when she was transferred to the Contract Administration Department, there were four (4) female employees, all of whom were African-American except for her. She contends that those employees created a "horrific environment" for her with knowledge that she was suffering from depression. Specifically, she notes that one of her co-workers, Victoria Hilton ("Hilton"), sent her malicious emails, yelled at her, and hung up on her. Grace also contends that no other employees had emails relating to them copied to supervisors and that different rules were applied to her than to other employees as it related to travel and hotel stays for work. She further notes that others used agency vehicles for personal reasons and exceeded the mileage allowable for agency vehicles. She contends that her two (2) suspensions while employed by LHFA were related to not following the hotel/travel rules and to failing to attend a meeting due to the fact that she was "upset and crying" because her co-worker, Hilton, had told her "[y]ou make me sick, get out

2

of my face." Grace alleges that, due to antagonism at work, she suffered from severe depression from January 2010 until the present and that her supervisors and co-workers were aware of such depression as well as her numerous requests to transfer back to her old position in the Compliance section; yet, she was never transferred back to that position. She notes that her depression included crying on the way to work, at work, on the way to properties and while at properties in connection with work, and on the way home from work. She explains that she was sent disciplinary letters while she was at home recovering from such depression.

Grace also contends LHFA is liable because it denied her unemployment compensation after she was terminated, and she asserts that LHFA employees perjured themselves and defamed her character by lying about her at her unemployment hearing. In conclusion, she asserts that all of the above alleged conduct by LHFA violated her civil and human rights. As relief, she seeks to be reinstated to her old position in the LHFA Compliance Department with payment of her salary retroactive to the date of her termination; to have her leave time returned to her employment record; to have the fact that she was terminated removed from her employment record; to receive compensation in the form of unemployment benefits for the past year and a half that she has been out of work; to have LHFA employees, Loretta Wallace, Terry Holden, and Victoria Hilton, reprimanded or removed from state service because of their malicious actions toward her; to have attorney, Mark Falcon, removed from representing any more state agencies and have his license to practice law revoked, as he knew and supported the alleged unethical business practices of LHFA; and to have the Louisiana Attorney General's Office investigate the

business practices of LHFA and make them terminate those practices.  *See*, R. Doc. 13.

<u>**LAW & ANALYSIS**</u>

**I.      Applicable Legal Standards:**

**(A)     Motion to Dismiss:**

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) challenges a complaint's compliance with the pleading requirements set forth in the Federal Rules. Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 12(b)(6).  The complaint must give the defendant "fair notice of what the claim is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  To meet that requirement, the complaint must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).[1]  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  *Id.*, at 1949-50.  *Iqbal* and *Twombly* therefore prescribe a two (2) step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether those allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief."  *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

---

[1] "In deciding a motion to dismiss, the court may consider documents attached to or incorporated in the complaint and matters of which judicial notice may be taken."  *Fairley v. Stalder*, 2008 WL 3244022 (5th Cir. 2008), quoting *Willard v. Humana Health Plan of Tex.*, 336 F.3d 375 (5th Cir. 2003).

"Plausibility," as used in *Twombly* and *Iqbal*, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, at 557. A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**(B)    Motion for More Definite Statement:**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). The purpose of Rule 12(e) is to provide relief from a pleading that is unintelligible, not one that is merely lacking detail. *U.S. E.E.O.C. v. Alia Corp.*, 2012 WL 393510 (E.D.Cal. 2012). Where the complaint is specific enough to appraise the responding party of the substance of the claim being asserted or where the detail sought is otherwise obtainable through discovery, a motion for more definite statement should be denied. *Id.* Motions brought pursuant to Rule 12(e) are "viewed with disfavor and are rarely granted[.]" *Id.*

**II.    Should Grace's claims be dismissed, or alternatively, should she be ordered to provide a more definite statement?**

As a preliminary matter, the undersigned finds that a more definite statement of Grace's claims is unnecessary given the additional facts that she provided in her response to LHFA's motion. The undersigned further finds that LHFA's motion to dismiss should be granted as to each of Grace's claims for the reasons that follow. Despite Grace's more detailed allegations in her response to the present motion, she has nevertheless failed to aver non-conclusory factual allegations supporting a plausible right to relief under each of the causes of action she has asserted.[2]

First, as to her claim for wrongful termination, the only federal statutory scheme prohibiting wrongful termination that could be at issue here is Title VII of the Civil Rights Act of 1964, which prohibits discrimination based upon race, color, religion, sex, or national origin. *See*, 42 U.S.C. §2000e, *et seq.* However, neither Grace's complaint nor her response to the present motion pleads a *prima facie* Title VII case of wrongful termination. Grace has not alleged that her purported wrongful termination was motivated by her race, color, religion, sex, or national origin. *See, Thomas v. Tyler County*, 2010 WL 4962968, *9 (E.D. Tex. 2010). Nowhere in the complaint or in her present opposition does she aver that she is a member of a protected class that affected the alleged termination. Her wrongful termination claim is therefore subject to dismissal. *Id.*, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Similarly, as to her hostile work environment claim, she has failed to allege adequate non-conclusory facts to sustain a *prima facie* case and to defeat LHFA's motion to dismiss. To sustain such a claim, Grace was required to allege facts indicating that: (1) she belongs

---

[2] Put another way, Grace has failed to allege factual matter permitting the undersigned to infer more than a mere possibility of misconduct on LHFA's part, and as a result, her case should be dismissed.

to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment

complained of was based on her protected characteristic; (4) the harassment complained

of was "sufficiently severe or pervasive to alter" a term, condition, or privilege of her

employment and create an abusive working environment;  and (5) the employer knew or

should have known of the harassment in question and failed to take prompt remedial

action.  *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343 (5th Cir. 2001); *Donaldson

v. CDB Inc.*, 2009 WL 1916466 (5th Cir. 2009).  As discussed above, Grace has not

asserted that any of the above-described, alleged harassment by LHFA employees was

based upon any protected characteristic, such as her race, color, religion, sex, or national

origin.  Furthermore, the types of harassment that she has described (*i.e.*, sending

malicious emails, yelling at her, and hanging up on her) are not of the severity typically

found to sustain a hostile work environment claim.  *See, Hockman v. Westward Commc'ns

LLC*, 407 F.3d 317, 326 (5th Cir. 2004)("rude or offensive comments, teasing, or isolated

incidents" do not rise to the level of actionable harassment); *Williams v. U.S. Dept. of Navy*,

2005 WL 2404757 (5th Cir. 2005)(co-worker's yelling and displaying anger toward plaintiff

was not considered a hostile work environment).[3]

---

[3] *See also, Ramsey v. Henderson*, 286 F.3d 264 (5th Cir. 2002)(Evidence that an African-
American supervisor smiled while an African-American co-worker yelled at a Caucasian employee, and
that the supervisor refused to sign a leave form for the distressed employee the next day, was insufficient
to make out a *prima facie* Title VII claim based on racial harassment hostile work environment, even in
light of the supervisor's prior alleged racial animus; the argument with the co-worker was unrelated to
race); *Harper v. Tyco Electronics Corp.*, 804 F.Supp.2d 159 (D.Del. 2011)(African-American employee's
allegations that supervisor disliked her, treated her curtly, avoided her, interfered with her ability to perform
her job, ignored emails, and left written instructions for her despite her preference for in-person discussion
was held insufficient to plead a nexus between the supervisor's conduct and the employee's race, as
required for a Title VII hostile work environment claim); *Perry v. Gotbaum*, 766 F.Supp.2d 151 (D.D.C.
2011)(Plaintiff contended that a co-worker harassed and humiliated him by sending emails to multiple
recipients with humiliating language about plaintiff; court held that the plaintiff's own conclusory
characterization of the emails was insufficient to establish the existence of a hostile work environment
claim); *Reed v. Metropolitan Government of Nashville and Davidson County*, 2008 WL 2604251, **3 (6th

Relative to her ADA violation claim, the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. §12112(a). A "qualified individual with a disability" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. §12111(8). Additionally, the ADA defines a disability as: (A) A physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2). "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995)(quoting 29 C.F.R. §1630.2(I)).

Grace has failed to sufficiently allege that her purported condition of severe depression is a disability for purposes of the ADA. Specifically, she has not alleged how such condition substantially limited one or more of her major life activities. Furthermore, although she has submitted some medical documentation with her opposition to this motion indicating that she was treated for depression related to stress at work, such medical documentation does not state that her depression substantially limited one or more of her

---

Cir. 2008)(holding that comments and emails, while inappropriate and unprofessional, were not sufficiently severe or pervasive to create a hostile or abusive work environment and further finding that there was no evidence that the comments and emails unreasonably interfered with the plaintiff's work performance).

major life activities.  Finally, Grace has not alleged that LHFA regarded her as being

disabled as a result of her alleged depression.  In particular, she has not alleged that LHFA

regarded her depression as being a condition that prevented her from performing the major

life function of work.  It has been held that the mere fact that an employer receives

documentation from a physician that is contained in an employee's personnel file, indicating

the employee's diagnosis with depression and the employee's reactions to medications or

hospitalizations for that condition, is not sufficient to establish that the employer regarded

the employee as substantially limited in the major life activity of working.  *Winters v.

Pasadena Independent School Dist.*, 2005 WL 165489 (5th Cir. 2005).[4]  Accordingly, this

claim should also be dismissed.

As to Grace's defamation claim, she provides absolutely no supporting factual

allegations for such claim in her complaint and in the letter attached to her complaint.  In

her opposition to the present motion, she contends that her character was defamed

because co-workers "lied" about her at her unemployment hearing.  In order to establish

a *prima face* case of defamation under Louisiana law, Grace must allege:  (1) a false and

defamatory statement was made about her; (2) an unprivileged publication to a third party;

(3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury.  *Henry

v. Lake Charles American Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009).  It has been held that

---

[4] *See also, Aldrup v. Caldera*, 274 F.3d 282 (5th Cir. 2001)(Employee's alleged depression, caused by the stress and anxiety of having to work with certain employees at a particular fire station, was not the type of disability protected by the ADA; the employee claimed an inability to perform any job at that particular location, not a general inability to perform a broad class of jobs).  Similarly, since Grace is seeking reinstatement to her old position in the Compliance section at LHFA, she is only alleging that her depression resulted from working with certain employees in a particular department (the Contract Administration department), rather than a general inability to perform a broad class of jobs.  Such an allegation is insufficient to sustain a claim of disability protected by the ADA.

statements made within the context of an unemployment hearing are subject to at least a qualified privilege because, although people have a right to seek unemployment compensation, an employer also has the right to oppose it. *See, Wright v. Bennett*, 2004-1944 (La. App. 1 Cir. 9/28/05), 924 So.2d 178. Under a qualified privilege defense, certain statements that might otherwise be deemed defamatory are protected because the circumstances of the communication show an underlying public policy incentive for protection. In effect, the qualified privilege applicable to statements made during unemployment hearings amounts to a rebuttal of the allegation of malice/bad faith/fault. The public's interest and social necessity mandate that an employer not be unreasonably restricted when required to provide information for a state agency to determine in a quasi-judicial proceeding whether a terminated employee should receive unemployment benefits. The employer must be free to make a complete and unrestricted communication without fear of liability in a defamation suit even if the communication is shown to be inaccurate, subject to the requisites that the communication is in good faith, is relevant to the subject matter of the inquiry and is made to a person (or agency) with a corresponding legitimate interest in the subject matter. *Melder v. Sears, Roebuck and Co.*, 98-0939 (La. App. 4 Cir. 3/31/99), 731 So.2d 991, discussing *Williams v. Tuoro Infirmary*, 578 So.2d 1006, 1010 (La. App. 4 Cir. 1991).

Thus, the statements made by LHFA employees at Grace's unemployment hearing are subject to a qualified privilege because of the public's interest and social necessity in allowing LHFA to provide free and unrestricted communication concerning the reasons for Grace's termination and her entitlement to unemployment benefits, without fear of liability for defamation. Furthermore, Grace has not alleged that, at the time of the hearing, LHFA

lacked probable cause to believe she had engaged in the conduct about which her co-worker's allegedly "lied." Finally, the statements made during the unemployment hearing were not published to third parties outside the confines of the privileged hearing.[5] Accordingly, even if the undersigned considers the additional facts alleged in Grace's present opposition, she would not be able to sustain a claim for defamation, and such claim should therefore also be dismissed.

Finally, concerning Grace's claim of unethical business practices, she does not allege any specific factual allegations underlying that claim nor does she cite to any particular legal authority upon which she is purportedly relying for that claim in her complaint, in the letter attached to the complaint, or in her present opposition.[6] Since she has not done so (and the undersigned is unable to identify any federal statute upon which Grace may rely in support of her generalized unethical business practices claim), she lacks a jurisdictional basis to proceed with that claim in this Court. Federal question jurisdiction does not exist relative to the claim; nor does diversity jurisdiction exist since the parties to this matter are not diverse, and it does not appear that more than $75,000, exclusive of

---

[5] *See, Wright*, at 189-190 (holding that comments made at an unemployment hearing, "just as many of the things that are done in a courtroom in a trial," are subject to a privilege. The court noted that, while people have the right to request unemployment compensation, employers have a right to oppose it in a hearing, and even if some statements made during the hearing are false, they are not published outside the confines of the privileged hearing and therefore are not defamatory. The court also found no evidence of malice on the part of the individuals who made the allegedly false statements or evidence of what kind of injury the plaintiff sustained as a result of the allegedly false statements. The court noted that, to prove malice or bad faith, the plaintiff must be able to demonstrate that the individuals who made the allegedly false statements did not have reasonable grounds for believing them to be true); *Kelly v. West Cash & Carry Bldg. Materials Store*, 99-0102 (La. App. 4 Cir. 10/20/99), 745 So.2d 743 (also noting that communications at an unemployment hearing are subject to a qualified privilege).

[6] Thus, this claim should be dismissed because Grace has failed to allege a cognizable legal theory and any factual allegations supporting a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

11

interest and costs, is in controversy regarding the claim.  Furthermore, since all of Grace's other claims have been dismissed, the undersigned may also decline supplemental jurisdiction over this remaining claim pursuant to 28 U.S.C. §1367(c)(3).[7]

## RECOMMENDATION

For all of the above reasons, it is recommended that the Motion to Dismiss (R. Doc. 8) and the Supplemental Motion to Dismiss (R. Doc. 17) filed by defendant, the State of Louisiana, through the Louisiana Housing Finance Agency, be **GRANTED** and that the claims of plaintiff, Kelley Grace, be **DISMISSED WITH PREJUDICE**.

Signed in chambers in Baton Rouge, Louisiana, March 13, 2012.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

[7] This could also be a basis for dismissing Grace's state law defamation claim since all of her federal claims over which this Court has original jurisdiction will be dismissed.  *See, Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580 (5th Cir. 1992)(Generally, state claims should be dismissed when federal claims to which they are supplemental or pendent are dismissed).